[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 9, 2012
JOHN LEY
CLERK

No. 11-14008
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cr-00017-KD-M-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN MARK JONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(July 9, 2012)

Before EDMONDSON, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Juan Mark Jones appeals following his convictions and 480-month total sentence for conspiracy to manufacture methamphetamine and possessing a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A) and (c)(1)(C), 21 U.S.C. § 846. On appeal, Jones raises three challenges to his convictions: (1) the district court erred in denying his motions, filed in response to the government's refusal to move for a sentence reduction based on his cooperation, to withdraw his plea, or, alternatively, order "specific performance at sentencing" by ordering the government to file a substantial-assistance motion; (2) the factual basis supporting one of his firearm-in-furtherance convictions was insufficient; and (3) trial counsel was ineffective. He also challenges his sentence as unreasonable. For the reasons set forth below, we affirm Jones's convictions and total sentence.

I.

A federal grand jury charged Jones with various counts, including, *inter alia*, conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count 1); and two counts of possessing a firearm during and in relation to a drug trafficking crime, on July 31, 2008, and December 29, 2008, respectively, in violation of

18 U.S.C. § 924(c)(1) (Counts 4 and 9). Through appointed counsel Cindy Powell, Jones initially pled not guilty to all charges.

Pursuant to a written agreement with the government, Jones later indicated that he would plead guilty to the three aforementioned offenses.  Jones also agreed to cooperate with the government.  In exchange, the government agreed that, if Jones provided:

> full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, *a decision specifically reserved by the United States in the exercise of its sole discretion*, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable.

The government agreed that if it determined that Jones's cooperation did not qualify as substantial assistance, it would "recommend . . . that the defendant receive a sentence at the low end of the applicable advisory guideline range."[1]

Attached to the plea agreement was a "factual resume," in which Jones stipulated that the government could prove certain facts beyond a reasonable doubt. Specifically, the police began investigating Jones after several incidents in which he

---

[1] The government also agreed to dismiss the other seven counts of the indictment.

came to their attention in connection with methamphetamine manufacturing, and learned from cooperating witnesses that he: (a) paid others to obtain pseudoephedrine for him, which he cooked into methamphetamine; (b) sold methamphetamine directly to customers; (c) "liked to carry a gun"; and (d) had a trailer on Blackwell Nursery Road.

The factual resume further stipulated that, on December 29, 2008, police responded to a trailer at 4470 Blackwell Nursery Road after receiving anonymous tips concerning methamphetamine-related activity at that address, and observed Jones inside. Police officers asked Jones to come outside, and, during an ensuing pat-down search, recovered a half-gram of methamphetamine from his pants pocket. In a garbage pail near the steps, police observed empty packs of pseudoephedrine and a funnel with white powder residue. Police also observed propane tanks and large containers in an open utility trailer on the premises. Based on this information, the police executed a search warrant and recovered propane tanks, caustic soda, jars, and a food processor with white powder residue on them, ammonia, Draino, coffee filters, plastic tubing, measuring cups, and empty pseudoephedrine boxes on the premises. Inside the trailer, police recovered pseudoephedrine, digital scales, baggies, and glass pipes with methamphetamine residue. Police also recovered a number of firearms, including two shotguns, four rifles, three handguns, and a crossbow.

Also, during a post-arrest interview, Jones admitted that he resided alone at the trailer on the 4470 Blackwell Nursery Road, and that everything inside was his. He admitted to police that one of the pistols and one of the shotguns belonged to him. He alleged that an acquaintance set him up by leaving the utility trailer on his property.

At his plea hearing in March 2009, Jones verified that trial counsel had explained his charges to him. He was satisfied with counsel's representation thus far. Jones confirmed that he read the written plea agreement before signing it, and reviewed it with counsel. He also confirmed that he had not received any promises apart from those contained therein.

The district court informed Jones that Count 1 carried a statutory imprisonment range of 10 years to life; Count 4 carried a 5-year term of imprisonment, consecutive to the other counts; and Count 9 carried a 25-year term of imprisonment, consecutive to the other counts. The court explained that, "if there is not substantial cooperation," it had "no authority except to give [him] forty years." Jones indicated that he understood.

The district court invited the government to recite the elements of each count. The government then proffered, in relevant part, that Jones was present when the police executed a search warrant on a residence on Blackwell Nursery Road, and discovered a methamphetamine manufacturing lab. Police found guns at this address

as well, and Jones "claimed possession of those firearms." Prior police investigation revealed that Jones had engaged in methamphetamine manufacturing activity. Jones admitted that the government could prove the facts both as proffered and as stated in the factual resume. The district court , finding that Jones pled knowingly and voluntarily and an adequate factual basis supported the charges, accepted his plea to Counts 1, 4, and 9.

Jones filed, and the district court granted, a number of unopposed motions to continue sentencing so that he could pursue opportunities to cooperate. In December 2010, however, Powell moved to withdraw as trial counsel based on a potential conflict of interest that had arisen after Jones pled guilty. The district court granted Powell's motion and appointed substitute counsel.

Through substitute counsel, Jones moved to withdraw his guilty plea based on previous trial counsel's ineffective assistance and the government's failure to file a substantial-assistance motion. At a hearing on this motion, Jones admitted that previous trial counsel's actual conflict came about after he entered his plea. The court denied Jones's motion to withdraw his guilty plea, but, in the alternative, construed Jones's arguments to raise a claim that the government violated his due process rights for failing to file a substantial-assistance motion. After permitting Jones to call several witnesses who testified about the extent of his cooperation, the

6

court directed him to file a written motion explaining his due process argument and the relief that he sought.

In accordance with the district court's directive, Jones filed a motion for "specific performance at sentencing," in which he requested that the court compel the government to file a substantial-assistance motion pursuant to U.S.S.G. § 5K1.1. Jones contended that the government breached the plea agreement because it refused to file a § 5K1.1 motion despite his substantial assistance. He also contended that the government acted in bad faith, and without a rational relation to a legitimate purpose, by inducing him to plead guilty with the promise that it would fairly evaluate his cooperation, but then arbitrarily refusing to file a substantial-assistance motion.

To support his motion for specific performance, Jones submitted several sworn affidavits from criminal defense attorneys who had negotiated pleas with Assistant United States Attorney ("AUSA") Glorida Bedwell, the prosecutor in his case. These attorneys discussed instances where their clients cooperated pursuant to their plea agreements with the government, but AUSA Bedwell refused to file a substantial-assistance motion, or did not file one at the time they desired.

At Jones's sentencing hearing, the district court addressed this motion. The government submitted that part of the reasoning behind its decision to refuse § 5K1.1 reductions was to maintain a defendant's credibility in future prosecutions, explaining

7

that opposing attorneys could exploit successive sentence reductions on cross-examination. In addition, it had an interest in preserving an incentive for defendants to continue assisting investigators after they were sentenced. The government further explained that, when a criminal defendant had cooperated in a way that could qualify as substantial assistance, its policy was to have the individual prosecutor submit a written form to the criminal division chief, who made the ultimate decision on whether to file. It noted that AUSA Bedwell had in fact submitted a substantial-assistance form in Jones's case, but the criminal division chief decided against filing a motion at that point because there still were ways in which Jones could be helpful and he wanted to maximize Jones's credibility.

The district court denied Jones's motion for specific performance. The court credited the government's description of its process when deciding whether to file substantial-assistance motions. Because AUSA Bedwell's decision was subject to supervisory oversight, it found that her standards were not arbitrary, but subject to a policy that treated all defendants equally. It further found that the government's articulated reason in Jones's particular case, namely, ensuring that he continued to cooperate, was rationally related to a legitimate government purpose.

Proceeding to imposition of Jones's sentence, the government recommended "a sentence within the guidelines as set forth in the PSI." The district court observed

that, although the guidelines recommended a total sentence of at least 570 months, the mandatory minimum total of 40 years, or 480 months, adequately satisfied the goals in 18 U.S.C. § 3553(a). Accordingly, the district court sentenced Jones to 480 months, which consisted of consecutive imprisonment terms of 120 months on Count 1, 60 months on Count 4, and 300 months on Count 9.

## II.

We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). We generally review *de novo* whether the government has breached a plea agreement. *United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008). But if that issue was not raised before the district court, it will be reviewed only for plain error. *Id.* Under this standard, a criminal defendant must prove that (1) an error occurred; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

The favored remedy for a breach of the plea agreement is specific performance, particularly where there is little question that the defendant entered the plea knowingly and voluntarily. *United States v. Johnson*, 132 F.3d 628, 631 (11th Cir. 1998). "[W]hen a plea rests in any significant degree on a promise or

agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).  But the government does not breach the plea agreement by declining to file a substantial-assistance motion when the plea agreement leaves that decision to the government's sole discretion. *See United States v. Forney*, 9 F.3d 1492, 1499-1500 & n.2 (11th Cir. 1993).

A court may permit a defendant to withdraw his guilty plea prior to sentencing if it finds that the defendant established a "fair and just reason" for doing so.  Fed.R.Crim.P. 11(d)(2)(B).  In determining if a reason is fair and just courts consider whether: (1) the defendant benefitted from "close assistance of counsel" at the time; (2) the plea was knowing and voluntary; (3) judicial resources would be conserved; and (4) granting the defendant's motion would prejudice the government.  *Brehm*, 442 F.3d at 1298 (upholding the district court's denial of a motion to withdraw a guilty plea where the defendant expressed satisfaction with counsel's representation, confirmed that he understood the applicable sentencing consequences, had his sentencing hearing continued three times, and did not move to withdraw for approximately eight months after he pled); *see also United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005)

10

(discussing the three "core concern[s]" of Fed.R.Crim.P. 11 that must be satisfied for a plea to be knowing and voluntary).

Generally, courts will "not evaluate the assistance rendered by a defendant offering cooperation as a term of his plea agreement unless and until the government makes a . . . motion for downward departure based on substantial assistance." *Forney*, 9 F.3d at 1501. In the absence of an express promise on the government's part to file a substantial-assistance motion, courts retain the authority to review the government's failure to do so only for a constitutionally impermissible motivation, such as "race, religion or other arbitrary classification." *Id.* at 1501-02 & n.4. To obtain judicial review of the government's decision on a substantial-assistance motion, a defendant must not simply allege a constitutional violation, but make a "substantial showing" to this effect. *Forney*, 9 F.3d at 1502.

When a defendant claims merely that he has provided substantial assistance, or supplements that claim with "additional but generalized allegations of improper motive"—he will not be entitled to relief. *Wade v. United States*, 504 U.S. 181, 186, 112 S.Ct. 1840, 1844, 118 L.Ed.2d 524 (1992). Similarly, the government's decision to file a § 5K1.1 motion, or decline to do so, "is not reviewable for arbitrariness or bad faith." *Forney*, 3 F.3d at 1502 & n.5 (quotation omitted).

11

We conclude that both of Jones's motions lacked merit.  Insofar as Jones sought relief based on a perceived breach of his plea agreement, no such "breach" occurred.  *See Forney*, 9 F.3d at 1499-1500.  Jones entered into a plea agreement with the government that left to the government's "sole discretion" several pertinent issues, including: (1) whether his cooperation amounted to "substantial assistance"; and (2) the applicability of U.S.S.G. § 5K1.1, as opposed to Rule 35.  Thus, contrary to Jones's characterization of the plea agreement, the government only agreed to consider his cooperation in the context of a future substantial-assistance motion, not to actually file one.  *See Forney*, 9 F.3d at 1500 n.2.  Irrespective of Jones's subjective intent at the time he signed the plea agreement, given the agreement's written terms—as well as his denial at his plea hearing that he was promised anything outside of the written plea agreement—he failed to demonstrate that he was induced, as a matter of law, to plead guilty by a promise that he would receive a substantial- assistance reduction.  *Cf. Santobello*, 404 U.S. at 262, 92 S.Ct. at 495.

There are no other indications that Jones's should have been allowed to withdraw his plea.  *See Brehm*, 442 F.3d at 1298.  Jones expressly stated at his plea hearing that he was satisfied with trial counsel.   Additionally, the district court confirmed that he understood: (1) the 40-year minimum total sentence that

12

he faced on the three offenses to which he pled; (2) its inability to avoid this total sentence absent a substantial-assistance motion filed by the government; (3) the elements of each charged offense; and (4) the rights he would relinquish by persisting with a guilty plea. *See Moriarty*, 429 F.3d at 1019-20. We also note that the 15-month lapse between Jones's guilty plea and his motion, during which the court continued his sentencing hearing on several occasions, suggested that the withdrawal of his plea would waste judicial resources and prejudice the government. *See Brehm*, 442 F.3d at 1298-99.

Moreover, Jones articulated no basis upon which to compel specific performance. *See, e.g.*, *Johnson*, 132 F.3d at 631. At the outset, we observe that the quality of Jones's assistance to the government was largely irrelevant to both the district court's conclusion and our resolution of his appellate challenge. *See Wade*, 504 U.S. at 187, 112 S.Ct. at 1844. Insofar as Jones attempted to make his case with affidavits from other attorneys that alleged a pattern of improper inducement on the part of the government, these affidavits amounted to little more than the attorneys' subjective opinions that the government acted in bad faith by failing to file substantial-assistance motions in their own clients' cases. *See Wade*, 504 U.S. at 186, 112 S.Ct. at 1844; *Forney*, 9 F.3d at 1502 n.5. In any event, absent authority to support his proposition that the government's "pattern" of

13

inconsistency in the manner in which it declined to file § 5K1.1 motions amounted to an "arbitrary classification," Jones's affidavits failed to support an allegation, much less a "substantial showing," of a constitutional violation. *See Forney*, 9 F.3d at 1502.

Finally, Jones's alternative argument that the government breached the plea agreement by recommending a within-guideline sentence, which he raised for the first time on appeal, cannot succeed under the plain error standard. *See De La Garza*, 516 F.3d at1269. While the government did appear to breach its promise in the plea agreement to recommend a sentence at the low end of the guideline range, he cannot show an affect on his substantial rights because the government's recommendation of a within-guideline sentence, had no apparent effect on the district court, which imposed a total sentence nearly eight years shorter than the low end of his guideline range. *See United States v. Pantle*, 637 F.3d 1172, 1177-78 (11th Cir. 2011) (holding that, even if the district court erroneously calculated a defendant's offense level, that error did not affect his substantial rights because it was unclear that he would not have received the same sentence but for the error)

III.

When a defendant fails to object to an asserted Fed.R.Crim.P. 11 violation before the district court, we review for plain error. *Moriarty*, 429 F.3d at 1019.

The defendant bears the burden to satisfy all requirements of the plain error test. *Id.* To prevail under this standard in the context of a Rule 11 error, a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004).

One of the requirements in Rule 11 is that the district court independently "determine that there is a factual basis for the plea." Fed.R.Crim.P. 11(b)(3). When evaluating if a district court complied with this provision, we inquires "whether the district court was presented with evidence from which it could reasonably find that the defendant was guilty." *United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000) (quotation and alteration omitted). Relevant to this inquiry are the facts included in the government's proffer, and, if applicable, any facts to which the defendant has stipulated in writing as part of the plea agreement. *See id.*; *United States v. Frye*, 402 F.3d 1123, 1128-29 (11th Cir. 2005) (evaluating the sufficiency of the factual basis to prove a § 924(c)(1) offense in light of the "factual resume").

To establish a § 924(c)(1) violation, the government must show that: (1) the defendant possessed the firearm; and (2) the firearm in question "helped, furthered, promoted, or advanced" the alleged drug trafficking activity. *See United*

15

*States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir.2002). Regarding the first element, when a defendant owns or otherwise exercises control over a residence where contraband is found, he may be found in constructive possession of the contraband. *United States v. Garcia*, 447 F.3d 1327, 1338 (11th Cir. 2006). Regarding the second element, there must be "some nexus between the firearm and the drug selling operation." *Timmons*, 283 F.3d at 1253 (holding that the government could prove that the guns were possessed in furtherance of drug trafficking with evidence that guns were found in a residence along with materials indicative of drug distribution). In other words, the gun must "facilitate, or have the potential of facilitating, the drug trafficking offense." *Frye*, 402 F.3d at 1128 (quotation omitted).

Here, Jones, who did not raise an objection before the district court to the factual basis supporting Count 9, fails to demonstrate plain error in the court's acceptance of his guilty plea in this respect. *See Moriarty*, 429 F.3d at 1019. Between the proffer and the factual resume, the district court had sufficient facts upon which to support Jones's plea. Fed.R.Crim.P. 11(b)(3); *Frye*, 402 F.3d at 1128-29. Significantly, Jones agreed to all facts contained therein. The proffer indicated that, on December 29, 2008, the date charged in Count 9, police discovered a methamphetamine manufacturing lab at his address. The factual

16

resume elaborated that the police also found methamphetamine on his person, and pseudoephedrine, digital scales, and baggies inside his trailer. Because the recovered guns were found in close proximity to these materials, a fact-finder could infer that they furthered drug-trafficking activity. *See Timmons*, 283 F.3d at 1253.

Although Jones correctly highlights that he denied to police that he owned the methamphetamine manufacturing materials outside of the trailer, this fact did not exonerate him, as he insists. Rather, the fact that he resided alone at the trailer gives rise to an inference of possession, and, in any event, Jones expressly admitted that he resided in the trailer and everything inside it, including materials indicative of drug trafficking, belonged to him. *See Garcia*, 447 F.3d at 1338. As such, there was sufficient evidence upon which the district court reasonably could infer that Jones's guns facilitated, or at least had the potential to facilitate, his methamphetamine manufacturing activities. *See Camacho*, 233 F.3d at 1317; *Frye*, 402 F.3d at 1128.

## IV.

Where appropriate, we review claims for ineffective assistance of counsel *de novo* as mixed questions of law and fact. *Caderno v. United States*, 256 F.3d 1213, 1216-17 (11th Cir. 2001).

In *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), the Supreme Court concluded that failure to raise ineffective-assistance-of-counsel claims on direct appeal would not bar such claims from being raised for the first time in a collateral attack. *Id.* at 509, 123 S.Ct. at 1696. In arriving at this conclusion, the Supreme Court held that in most cases, the record was inadequate to raise an ineffective-assistance claim on direct appeal because the trial evidence was devoted to guilt-or-innocence issues, as opposed to the reasoning behind counsel's actions. *Id.* at 504-05, 123 S.Ct. at 1694. It observed that the record "may contain no evidence of alleged errors of omission, much less the reasons underlying them." *Id.* at 505, 123 S.Ct. at 1694. Absent a factual record tailored to this purpose, consideration of ineffective-assistance claims on direct appeal risked the rejection of meritorious claims and wasted judicial resources. *Id.* at 506, 123 S.Ct. at 1695. By contrast, it held that the district court on collateral review could handle such claims more efficiently. *Id.* at 506-07, 123 S.Ct. at 1695. As such, "an ineffective assistance of counsel claim is properly raised in a collateral attack on the conviction under 28 U.S.C. § 2255," as opposed to direct appeal. *United States v. Merrill*, 513 F.3d 1293, 1308 (11th Cir. 2008) (quotations and alteration omitted).

We note that both Jones and the government concur that the record is sufficient to adjudicate the merits of his ineffective assistance claims. Nevertheless, consideration of these claims on direct appeal is unwarranted. Significantly, Jones's ineffective-assistance allegations that he raises on appeal include errors of omission, such as the failure to adequately oversee his debriefing, which trial counsel has yet to address. *See Massaro*, 538 U.S. at 505-06, 123 S.Ct. at 1694. Moreover, even if the available record facially contradicted one or more of Jones's claims, he raises other claims that, despite the government's insistence, are not "frivolous," and it arguably would be inappropriate for us to resolve them in the first instance. *See Merrill*, 513 F.3d at 1308; *see also United States v. Barnette*, 10 F.3d 1553, 1556 (11th Cir. 1994) ("an appellate court does not find facts"). Accordingly, we decline to consider Jones's ineffective-assistance challenge.

V.

Generally, we examine a defendant's sentence for both procedural and substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007). But district courts remain bound by mandatory minimum sentences set forth in criminal statutes. *United States v. Shelton*, 400 F.3d 1333 n.10 (11th Cir. 2005).

19

In the present case, Jones's 40-year total sentence is not reviewable for "reasonableness" because it represented the aggregate of the mandatory minimum terms of imprisonment on Counts 1, 4, and 9. *See Shelton*, 400 F.3d at 1333 n.10; *see also* 18 U.S.C. § 924(c)(1)(A), (c)(1)(C); 21 U.S.C. § 841(b)(1)(A). Jones's explanations as to why his 40-year total sentence was both unique and unreasonable did not permit the district court to depart from controlling precedent and sentence him below the minimum statutory penalty for each offense of conviction. *See Shelton*, 400 F.3d at 1333 n.10. As a consequence, Jones's challenge to the reasonableness of his sentence is without merit.

For the foregoing reasons, we affirm Jones's convictions and total sentence.

**AFFIRMED.**