[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 15, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-13396

_____

D. C. Docket No. 05-00393-CR-T-23TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GONZALO ARTURO DE LA GARZA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 15, 2008)**

Before DUBINA and MARCUS, Circuit Judges,  and COOGLER,[*] District Judge.

DUBINA, Circuit Judge:

_____

[*] Honorable L. Scott Coogler, United States District Judge for the Northern District of Alabama, sitting by designation.

Appellant Gonzalo Arturo De La Garza appeals his conviction and sentence for conspiracy to possess with intent to distribute 5 kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of the Marine Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. App'x § 1903(a), (g), (j) (2005).[1]  De La Garza raises the following arguments on appeal, none of which were raised in the district court: (1) the Government breached its plea agreement with De La Garza by attacking his credibility during sentencing; (2) the district court had no subject matter jurisdiction over the offense because the stipulated facts did not show that De La Garza was on a vessel subject to the jurisdiction of the United States; (3) the MDLEA exceeded Congress's authority; and (4) the MDLEA is unconstitutional because it does not provide for a jury to decide the jurisdictional facts.  After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm De La Garza's conviction and sentence.

## I. Background

We reproduce the background facts verbatim from De La Garza's plea agreement:

> Prior to August 30, 2005, the defendant, Gonzalo Arturo De La Garza, was hired to travel from Puerto Vallarta to Huatulco, Mexico, in order

---

[1] The MDLEA is now codified at 46 U.S.C. §§ 70501-70507.

2

to repair boat engines. Once De La Garza arrived at the vessel, which was on land, it was clear to him that the vessel was a "go-fast" vessel used for drug smuggling. Nevertheless, De La Garza knowingly and willingly prepared the vessel. Once the vessel was ready, De La Garza was, for the first time, instructed to be a crew member on a vessel that was initially tasked with providing support, in the form of food, water and fuel, to the go-fast vessel that had already left Mexico to pick up the cocaine at sea. De La Garza left Mexico onboard the support go-fast vessel with [several others]. Upon reaching the first go-fast, De La Garza and the other[s] discovered that the crew of the first go-fast was without food, water and fuel, and was unable to continue. The defendant and the other crew members were directed to take their go-fast vessel to accept the load of cocaine. Eventually, they did receive approximately 129 large bales of cocaine from a Colombian go-fast vessel. On or about August 30, 2005, the defendant and other crew members were onboard the go-fast vessel, in the eastern Pacific Ocean just south of the Galapagos Islands. The go-fast vessel, which was not flying any flag and had no indicia of nationality, was later stopped and boarded by the United States Coast Guard. Upon the Coast Guard boarding the go-fast vessel, approximately 2500 kilograms of cocaine was seized. The defendant was thereafter brought into the United States at St. Petersburg, in the Middle District of Florida.

(R. Vol. 1 DE 89 at 11.)

Based on these facts, De La Garza pleaded guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. App'x § 1903(g) and (j). In accepting the plea agreement, De La Garza acknowledged that he understood both the nature of the offense to which he was pleading guilty and the elements thereof. When asked if he understood the charge, De La Garza

3

responded "yes," and when asked how he pled to that charge, De La Garza said "guilty." De La Garza conceded in the plea agreement that the court had jurisdiction and authority to impose a sentence upon him. He also reaffirmed that the stipulated facts in the plea agreement were true.

The district court then proceeded to sentencing. At the sentencing hearing, De La Garza testified that he did not know that the work in Huatulco involved drugs until he arrived, that he did not know he would be a crew member until he finished the repairs, and that the lead drug smuggler coerced him to work on the go-fast vessel. The Government questioned the credibility of De La Garza's testimony by noting that Huatulco is over 1000 miles from Puerto Vallarta and arguing that it made no sense for De La Garza to be chosen for the repair and crew work when he was so far away. The prosecutor later made other statements challenging De La Garza's credibility: "I don't think there is any part of [De La Garza's story] that makes sense"; and "Even if what he says is true, to the point where he gets [to Huatulco] and he has now been deceived," he still worked on the vessel willingly. De La Garza made no objection to these statements.

The district judge found De La Garza credible and found that he was coerced to get on the go-fast vessel, but he declined De La Garza's request for a U.S.S.G. § 3B1.2 decrease in offense level for a "minor role" and De La Garza's request for a

4

U.S.S.G. § 5K2.12 downward departure for coercion. The judge reasoned that a "minor role" finding was inappropriate because a mechanic plays an important role in the crew of a month-long drug shipment and "duress doesn't reduce your role." The judge rejected De La Garza's § 5K2.12 argument because De La Garza openly admitted that he willfully and knowingly committed the offense conduct—repairing a drug vessel in furtherance of a conspiracy to possess with intent to distribute 5 or more kilograms of cocaine on a vessel subject to the jurisdiction of the United States. In other words, De La Garza was coerced to get on the vessel, but he was not convicted of any crime for that action. The judge then sentenced De La Garza to 135 months imprisonment and five years of supervised release, the low end of the Guidelines range.

## II. Discussion

*A. Breach of Plea Agreement*

Whether the Government breached a plea agreement is a question of law, to be reviewed *de novo*. *United States v. Mahique*, 150 F.3d 1330, 1332 (11th Cir. 1998). Because De La Garza failed to raise this issue before the district court, however, we review for plain error. *United States v. Romano*, 314 F.3d 1279, 1281 (11th Cir. 2002). Under plain error review, there must be (1) an error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that seriously

affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* For an error to affect substantial rights, "in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1778, 123 L. Ed. 2d 508 (1993). The defendant has the burden of persuasion as to prejudice. *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005).

According to De La Garza, the Government violated the terms of the plea agreement by arguing that his sentencing testimony was not credible. He contends that the attack on his credibility breached the plea agreement because the Government challenged the veracity of facts stipulated in the agreement. This court has held that the Government breaches a plea agreement where the Government introduces or supports facts at sentencing that contradict the facts stipulated to in the agreement. *See United States v. Boatner*, 966 F.2d 1575, 1579 (11th Cir. 1992). At sentencing, De La Garza testified that he did not learn of the nature of the work he would be performing until he arrived in Huatalco, that he was not told to join the go-fast vessel's crew until after he finished the repair work, and that he refused to join the crew until he was coerced. Under the stipulated facts, De La Garza did not learn of the nature of his work until he arrived in Huatulco, and the smugglers did not instruct him to be a crew member until he

6

completed the repairs. With regard to whether De La Garza was coerced to work as a crew member, however, the facts are silent.

Because the Government did not stipulate that De La Garza was coerced, the Government could question De La Garza's credibility to attack that assertion without breaching the plea agreement. The Government, however, also questioned why De La Garza would have been chosen for the repair and crew work when he lived over 1000 miles away. The prosecutor said that portion of De La Garza's story did not "make[] sense" and stated that "[e]ven if what he says is true [about his ignorance that drugs were involved], to the point where he gets there, and he has now been deceived," he completed the work on the vessel anyway. The prosecutor essentially argued that it made no sense to get a mechanic from over 1000 miles away unless that mechanic was part of the drug smuggling plot from the outset. In short, the Government contested the stipulated fact that De La Garza did not know drugs were involved until he arrived in Huatulco. Accordingly, we conclude that the Government breached the plea agreement.

Nonetheless, De La Garza's argument fails because he has not shown that the prosecutor's breach affected his substantial rights—a requirement under plain-error review. Indeed, despite the challenge to De La Garza's credibility, the district court credited his testimony—not only that he did not know drugs were

involved until arriving in Huatulco, but also that he was coerced to join the go-fast vessel crew. The district court nonetheless found no reason to reduce De La Garza's Guidelines range or grant a downward departure: it refused to grant a § 3B1.2 decrease in offense level for a "minor role" because a mechanic is an important participant and, though De La Garza was coerced, "duress doesn't reduce your role"; it refused to grant a § 5K2.12 downward departure for coercion because the crime—joining the conspiracy by fixing the go-fast vessel—was complete before De La Garza was coerced.[2] This reasoning would be the same whether De La Garza knew drugs were involved before departing for Huatulco or not. Moreover, the district court sentenced De La Garza at the low end of the Guidelines range. Under these circumstances, De La Garza's argument that there was a reasonable probability that he might have obtained a better result had he not been required to counter the Government's position is insufficient to meet his burden to establish prejudice. It is, at best, uncertain whether the Government's breach had an effect on his sentence, and therefore we hold that De La Garza failed to establish plain error. *See Rodriguez*, 398 F.3d at 1301.

*B. Other Arguments*

---

[2] We offer no opinion on the propriety of this reasoning. As part of his plea deal, De La Garza waived the right to directly challenge the district court's sentencing reasoning. (R. Vol. 1 DE 89 at 8.)

De La Garza's remaining arguments are that the district court had no subject matter jurisdiction over the offense because the stipulated facts did not show that De La Garza was on a vessel "subject to the jurisdiction of the United States"; the MDLEA is unconstitutional because it does not provide for a jury to decide that fact; and the MDLEA is unconstitutional because it was beyond Congress's power to enact.

De La Garza knowingly waived the latter two arguments. (R. Vol. 1 DE 89 at 8.) "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). Our decision in *United States v. Lewis*, 492 F.3d 1219 (11th Cir. 2007) (en banc), submitted by De La Garza as supplemental authority, is inapposite. In *Lewis*, we adopted the distinction between forfeiture, "the simple failure to assert a right," and waiver, "the intentional relinquishment of a known right." *Id.* at 1222. While waived claims are not reviewed on appeal, we held that claims simply forfeited would be reviewed for plain error. *Id.* The defendant in *Lewis* proceeded through trial and conviction without asserting the Double Jeopardy Clause as a bar to his prosecution, but he never waived the double jeopardy argument; we therefore

9

reviewed his double jeopardy claim for plain error. *Id.*

Here, on the other hand, De La Garza pleaded guilty, knowingly waiving all non-jurisdictional challenges to his conviction. (R. Vol. 1 DE 89 at 8.) His arguments that Congress had no authority to enact the MDLEA and that the MDLEA violates an individual's Fifth and Sixth Amendment rights by allowing judicial determination of facts were therefore waived, so we do not address them.

De La Garza did not waive his subject matter jurisdiction argument because it cannot be waived. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005). We hold, however, that the district court had subject matter jurisdiction over the charge for which De La Garza was convicted.

"[D]istrict courts . . . have original jurisdiction . . . [over] all offenses against the laws of the United States." 18 U.S.C. § 3231; *see also* U.S. CONST. art. III, § 2 ("The judicial Power shall extend to all Cases . . . arising under . . . the Laws of the United States."). Here, the Government charged De La Garza with an offense against the laws of the United States, so absent a separate limit on subject matter jurisdiction, the district court had authority to adjudicate whether De La Garza conspired to violate the MDLEA.

We have interpreted the "on board a vessel subject to the jurisdiction of the United States" portion of the MDLEA as a congressionally imposed limit on

courts' subject matter jurisdiction, akin to the amount-in-controversy requirement contained in 28 U.S.C. § 1332. *See United States v. Tinoco*, 304 F.3d 1088, 1107 (11th Cir. 2002) (stating that MDLEA "provides that the question of whether a vessel is subject to the jurisdiction of the United States should be treated purely as an issue of subject matter jurisdiction for the court to decide").[3] Therefore, for a district court to have adjudicatory authority over a charge that a defendant "knowingly or intentionally . . . possess[ed] with intent to manufacture or distribute a controlled substance" in violation of 46 U.S.C. App'x § 1903(a), the Government must preliminarily show that the defendant was "on board a vessel subject to the jurisdiction of the United States." *Id.* Furthermore, for a district court to have adjudicatory authority over a charge that a defendant conspired to violate the substantive crime defined in subsection (a), the Government must preliminarily show that the conspiracy's vessel was, when apprehended, "subject to the

---

[3] The Government challenges *Tinoco*'s characterization, repeated in *United States v. Rendon*, 354 F.3d 1320, 1324-25 (11th Cir. 2003), that the "vessel subject to the jurisdiction of the United States" element is a limit on subject matter jurisdiction. It argues that the characterization in each case is incorrect because the element deals with the territorial jurisdiction of the United States and not the adjudicatory power of the federal courts. Moreover, the Government contends that the characterization is not binding because it is dicta, and it conflicts with the Supreme Court's subsequent decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16, 126 S. Ct. 1235, 1244-45, 163 L. Ed. 2d 1097 (2006). Because the element does not limit subject matter jurisdiction, the Government contends, De La Garza waived his argument that the element was not met. We need not decide the issue to resolve this appeal because even if the "vessel subject to the jurisdiction of the United States" argument is properly before us, it fails.

11

jurisdiction of the United States." *Id.*; *see* 46 U.S.C. App'x § 1903(j) (2005) ("Any person who attempts or conspires to commit any offense defined in this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."); *see generally United States v. McPhee*, 336 F.3d 1269 (11th Cir. 2003) (requiring "subject to the jurisdiction of the United States" showing though defendant was convicted of conspiracy only).

"[A] 'vessel subject to the jurisdiction of the United States' includes . . . a vessel without nationality." 46 U.S.C. App'x § 1903(c)(1)(A) (2005). Here, De La Garza stipulated that the go-fast vessel "was not flying any flag and had no indicia of nationality." (R. Vol. 1 DE 89 at 11.) At his plea proceedings, the Magistrate Judge explained the charge and, as part of the explanation, noted that "our Government claims it has jurisdiction over [the vessel]." (R. Vol. 3 DE143 at 12.) When asked whether he understood the charge, De La Garza answered "Yes." (*Id.* at 15.) Despite this understanding, De La Garza nonetheless affirmed that he wished to plead guilty. (*Id.* at 21-22.) We hold that these particular circumstances are sufficient to establish that the conspiracy involved a "vessel without nationality," and therefore the court had jurisdiction.[4]

---

[4] To be thorough, we note that the following arguments touched upon, though not explicitly raised, in De La Garza's brief do not relate to subject matter jurisdiction, and therefore

## III. Conclusion

For the aforementioned reasons, De La Garza's conviction and sentence are affirmed.

**AFFIRMED.**

---

we do not consider them: the United States has no personal jurisdiction over De La Garza, or applying United States law to De La Garza otherwise violated the Due Process Clause of the Fifth Amendment, *see Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 103-04, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415 (1987) (noting that to exercise personal jurisdiction over a defendant there must be, *inter alia*, "a constitutionally sufficient relationship between the defendant and the forum"); the United States has no prescriptive jurisdiction over De La Garza's wholly extraterritorial conspiracy (also known as "legislative jurisdiction" or "jurisdiction to prescribe," *see Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 813, 113 S. Ct. 2891, 2918, 125 L. Ed. 2d 612 (1993) (Scalia, J. dissenting)); Congress did not intend for the conspiracy portion of the MDLEA to apply to wholly extraterritorial conspiracies, *see United States v. MacAllister*, 160 F.3d 1304, 1307 (11th Cir. 1998) ("The general rule is that a conspiracy to violate the criminal laws of the United States, in which one conspirator commits an overt act in furtherance of that conspiracy within the United States, is subject to prosecution in the district courts."); international comity concerns require that the conspiracy portion of the MDLEA not apply to wholly extraterritorial conspiracies, *see Hartford Fire*, 509 U.S. at 798 (majority opinion) (deciding "whether a court with Sherman Act jurisdiction should ever decline to exercise such jurisdiction on grounds of international comity").