[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14217
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cr-20123-JAL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RITA LOPEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 12, 2014)

Before WILLIAM PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Rita Lopez appeals her 41-month sentence, imposed after she pled guilty to

health-care fraud.  We affirm.

## I. BACKGROUND

Between March and October 2011, Lopez paid a doctor for prescriptions for home-health services for various Medicare beneficiaries. The doctor had not properly diagnosed the beneficiaries or prescribed the services. Lopez gave the prescriptions to others, who submitted false Medicare claims based on the prescriptions. Lopez also introduced others to the doctor who engaged in the same conduct. Medicare paid approximately $335,036 to various entities based on the fraudulent prescriptions. Lopez knew the prescriptions were fraudulent and would be used to submit fraudulent Medicare claims.[1]

After the government charged Lopez with one count of health-care fraud, in violation of 18 U.S.C. § 1347, Lopez signed a written plea agreement, in which she agreed to plead guilty to the charged count. The parties jointly agreed to recommend the following Sentencing Guidelines calculations: (1) a base offense level of 6, under U.S.S.G. § 2B1.1; (2) a loss amount of $335,036 and a resulting 12-level increase, under § 2B1.1(b)(1)(G); (3) a 3-level acceptance-of-responsibility reduction, under U.S.S.G. § 3E1.1; (4) a total offense level of 15; (5) a criminal history category of I; and (6) a resulting Guidelines range of 18-24 months of imprisonment. The agreement stated the government would not be bound to make these recommendations, if Lopez (a) failed to make full, accurate,

---

[1] The plea agreement provided that, if the case went to trial, the government would be able to prove these facts beyond a reasonable doubt.

2

and complete disclosure to the Probation Office of the circumstances surrounding her relevant offense conduct; (b) was found to have misrepresented facts to the government before entering into the plea agreement; or (c) committed any misconduct after entering into the agreement, including making any false statements or misrepresentations to any government entity or official.

In the agreement, the government reserved the right to inform the judge and the Probation Office of all facts pertinent to sentencing, including all relevant information concerning Lopez and her background and any offenses committed, whether charged or not.  The government further reserved the right "to make any recommendation as to the quality and quantity of punishment," "[s]ubject only to the express terms of any agreed-upon sentencing recommendations contained in th[e] agreement."  R. at 59.

In addition, Lopez agreed to entry of a money judgment against her in the amount of $335,036.  She also agreed to assist the government in all proceedings involving the forfeiture of her interests in property to satisfy the money judgment. Lopez agreed to provide the government with a financial statement within 30 days of the judge's acceptance of her plea.

On May 14, 2013, Lopez pled guilty to the charged count.  The district judge accepted Lopez's plea and adjudicated her guilty on that date.  The Sentencing Guideline calculations in Lopez's initial presentence investigation report ("PSI")

3

were the same as those agreed on by the parties, and yielded a Guidelines range of 18-24 months of imprisonment. Lopez filed a sentencing memorandum, in which she requested a sentence of probation with limited home confinement. Lopez asserted she had played a limited role in the scheme and did not retain any of the Medicare funds, which were paid to her employer. Lopez further contended she had introduced the doctor to only one other person, who had obtained fee-based prescriptions.

The government responded that, in Lopez's sentencing memorandum, she had "completely misrepresented herself and the nature of her criminal conduct." R. at 91. The government detailed Lopez's multiple doctor visits, during which she bought fraudulent prescriptions and discussed what she paid other doctors for such prescriptions. The government asserted Lopez had introduced several other participants into the scheme, and she had lied when government agents initially approached her. Consequently, the government requested a 24-month sentence.

During Lopez's initial August 2013 sentencing hearing, she withdrew her assertion that she had introduced only one other person to the doctor. The district judge noted Lopez's PSI appeared to contain incomplete information as to her finances and contained no information about her prior employment or her husband's income. The probation officer stated Lopez had provided little financial information during her interview. Lopez stated her husband, who recently had left

4

her, previously had worked at Wal-Mart, but currently was retired on a pension. The government noted Lopez previously had said her husband ran a travel agency. The judge adjourned the hearing, to give Lopez the opportunity to make a full disclosure of her finances.

An amended PSI, which again contained the same Guidelines calculations, included additional information concerning Lopez's prior employment. The amended PSI stated that, from 2006 through 2010, Lopez had cared for her ailing mother-in-law, who had died in 2010. Lopez reported her husband had supported her financially during this time. From April 2010 through December 2012, Lopez had worked as a marketer for Florida Patient Care and had been paid $6.15 per hour.

During Lopez's continued sentencing hearing, disagreements between the parties remained as to the accuracy of the financial information provided by Lopez. Following two recesses, Lopez explained she and the government had resolved several issues. The sole remaining issue concerned whether Lopez had been employed from 2006 to 2010. Lopez's counsel suggested an evidentiary hearing be held to resolve the government's claim that Lopez had lied about her employment.

Following a third recess, Lopez identified a correction to be made to the information she had provided to the Probation Office. She explained that, while

5

caring for her mother-in-law from 2006 through 2010, she had been paid at times by OD Home Healthcare for her work as her mother-in-law's home healthcare aide. Lopez further stated she also ran a corporation named Lucky Job Employment, through which she had been paid by OD Home Healthcare for home healthcare aide referrals.

The government called Special Agent Liz Santa Maria, of the Federal Bureau of Investigation ("FBI"). Agent Santa Maria testified that, while conducting an investigation into Continuous Home Care Services, Inc. ("CHCS"), a home healthcare agency, she identified various checks written from CHCS to Lucky Job Employment Corp., Rita Lopez, and R&R Employment Corp. Lucky Job Employment and R&R Employment were incorporated by Lopez. Santa Maria identified 10 checks dated between January and July 2010, in amounts ranging from $500 to $2,200, for a total of approximately $14,000. She testified agents had not sought to find all checks written to Lopez.

Agent Santa Maria further testified she had interviewed Daisy Acosta, who was a patient recruiter for Paradise Home Healthcare and a "check-casher." R. at 223. Acosta told Santa Maria that Acosta had spoken with Lopez before speaking with government agents. Lopez told Acosta "she didn't have to speak to agents and, if she were asked any questions, to say, 'No,' 'No,' 'No.'" R. at 224. Santa Maria first spoke with Acosta on June 7, 2013.

The district judge admitted into evidence Lopez's 2010 federal tax return, in which she had reported income of $49,463. Agent Santa Maria testified she did not know whether that amount included the previously identified checks. Santa Maria also testified that, when she initially approached Lopez, Santa Maria had sought information about various doctors and home healthcare agencies. Lopez steadfastly had declined to cooperate in the FBI's investigation and similarly had told Acosta not to cooperate with authorities.

The government argued the evidence showed Lopez had made false statements to the Probation Office as to her employment history in 2010. The government, however, declined to seek a sentencing enhancement for obstruction of justice or to withhold an acceptance-of-responsibility reduction. Instead, the government intended to seek an upward variance to a 36-month-imprisonment sentence. The district judge granted the government's motion for a § 3E1.1 reduction and adopted the PSI's factual findings and Guidelines calculations.

Lopez withdrew her request for a downward variance and asked for a within-Guidelines imprisonment sentence. She argued that, although she had declined to cooperate in the investigation, she never had intended to deceive the government, and had accepted responsibility. Moreover, she asserted, she had "lost everything." R. at 246. The government argued at length for a 36-month sentence, because Lopez had continued to lie and change her story.

7

Before imposing her sentence, the district judge recounted the inadequate financial information in the initial PSI and Lopez's subsequent disclosures. The judge discussed the conduct underlying Lopez's offense, which the judge described as "very serious" and an abuse of the "very fragile Medicare health system," R. at 260, while noting Lopez had no prior criminal history. The judge also found Lopez had not been truthful as to her income between January and April 2010, which came "perilously close to obstruction of justice and to a negation of any acceptance of responsibility." R. at 261.

The judge added:

> Having considered all of the factors under [18 U.S.C. §] 3553(a) and being especially mindful of both the nature and circumstances of the offense, the lack of forthrightness of this Defendant before this Court and the need for the sentence imposed to reflect just how serious this offense is, to promote respect for the law and provide just punishment for this offense, and to afford adequate deterrence to criminal conduct not only of this Defendant, but other persons who may be considering such conduct—Medicare fraud is rampant in our community. The sentence that I impose must speak loudly and clearly to the fact that this type of conduct is not acceptable.

R. at 262-63.

The judge sentenced Lopez to 41 months of imprisonment, to be followed by 3 years of supervised release, and ordered Lopez to pay $335,036 in restitution to the Centers for Medicare and Medicaid Services. The judge explained she had "considered the statements of the parties, the advisory presentence investigation

8

report and its addendums, which contain[ed] the advisory guidelines and the statutory factors set[] forth in Title 18, United States Code, Section 3553(a)(1) through (7)." R. at 264. Lopez renewed her prior objections.

Lopez argues on appeal the government breached her plea agreement by seeking an upward variance. Lopez contends breach occurred when, by seeking an upward variance, the government contradicted its prior assertion that Lopez's false statements to the Probation Office did not warrant different Guidelines calculations. Lopez further argues her sentence is substantively unreasonable, because the circumstances of her case did not warrant an upward variance. Lopez contends the fact that she pled to a "very serious offense" and the "fragile" nature of Medicare were improper considerations for the judge, since they are built into the Guidelines. Lopez Br. at 26 (internal quotation marks omitted). Moreover, she argues the judge over-emphasized the nature and circumstances of the crime and Lopez's lack of candor in choosing a sentence.

## II. DISCUSSION

A.  Government's Alleged Breach of Plea Agreement

We generally review de novo whether the government breached a plea agreement. *See United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008). Where a defendant fails to raise this issue before the district judge, however, we review for plain error. *Id.* Establishing plain error requires showing

9

(1) an error (2) that was plain, (3) affected one's substantial rights, and (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

"The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996). Whether a plea agreement was violated is determined according to the defendant's reasonable understanding, when she entered the plea. *United States v. Horsfall*, 552 F.3d 1275, 1281 (11th Cir. 2008) (per curiam)

Regardless of the standard of review, the government did not breach Lopez's plea agreement, which did not prohibit the government from seeking an upward variance. Lopez's plea agreement did not bind the government to make any particular recommendation as to Lopez's ultimate sentence. To the contrary, the agreement limited the government's recommendations only as to Lopez's Guidelines calculations. Subject only to that restriction, the government explicitly reserved the right to make "any recommendation as to the quality and quantity of punishment." R. at 59.

Given the district judge's finding that Lopez had not provided truthful information as to her income, which Lopez does not challenge on appeal, the government was released from its obligations under the agreement. Even if the

agreement had prohibited the government from seeking an upward variance, any such limitation was eliminated by the judge's finding as to Lopez's truthfulness.

Lopez's assertion on appeal, that the breach occurred when the government contradicted its representation that her false statements did not warrant different guideline calculations, is meritless. The government's decision not to withhold a motion for an acceptance-of-responsibility reduction, did not induce Lopez to plead guilty, which she already had done. *Cf. Taylor*, 77 F.3d at 370 (explaining the government is bound by any material promises that induce a defendant to plead guilty). Moreover, Lopez's plea agreement did not prohibit the government from seeking an upward variance in the first instance. Lopez has cited no authority supporting her suggestion that the government's decision not to withhold an acceptance-of-responsibility motion barred it from seeking by other means a sentence it deemed appropriate.

B.  Substantive Reasonableness

We examine the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard, in light of the totality of the circumstances and the 18 U.S.C. § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). The district judge must impose a sentence sufficient, but not greater than necessary, to comply with the purposes listed in § 3553(a)(2), including the need to reflect the seriousness of the crime, promote respect for the law, provide

just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). The party challenging the sentence has the burden of showing it is unreasonable. *United States v. Dean*, 635 F.3d 1200, 1203-04 (11th Cir. 2011).

The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district judge. *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (per curiam). We will reverse only if left with the "definite and firm conviction" the judge committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence outside the range of reasonable sentences dictated by the facts of the case. *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (citation and internal quotation marks omitted). A sentence imposed well below the statutory maximum is one indicator of a reasonable sentence. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam). Conversely, a judge's unjustified reliance upon any one § 3553(a) factor may be a symptom of an unreasonable sentence. *United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006) (holding a sentence of five hours of imprisonment was unreasonable, when the district judge focused "single-mindedly" on the goal of restitution to the detriment of all other sentencing factors).

Lopez has not met her burden of showing her sentence is substantively unreasonable in light of the record and the § 3553(a) factors. *See Gall*, 552 U.S. at 51, 128 S. Ct. at 597; *Dean*, 635 F.3d at 1203-04. Her 41-month sentence is well below the 10-year statutory maximum penalty. *See* 18 U.S.C. § 1347; *Gonzalez*, 550 F.3d at 1324. Moreover, her sentence met the goals embodied in § 3553(a). In particular, the judge expressed concern regarding Lopez's truthfulness in the proceedings and the seriousness of Medicare fraud, while accounting for Lopez's lack of prior criminal history. Considering the judge's findings as to Lopez's lack of candor and involvement in the offense, the judge did not abuse her discretion, when she concluded a sentence outside the Guidelines range was needed to promote respect for the law, provide just punishment, and deter Lopez and others from further criminal activity. *See* 18 U.S.C. § 3553(a); *Gall*, 552 U.S. at 51, 128 S. Ct. at 597. Although the judge emphasized Lopez's untruthfulness and the characteristics of the crime, the record does not suggest the judge did so "single-mindedly" to the detriment of all other § 3553(a) factors, which she also explicitly acknowledged. *See Crisp*, 454 F.3d at 1292.

**AFFIRMED.**

13