[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12963
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cr-00006-SCB-TBM-2

UNITED STATES OF AMERICA,

                                                              Plaintiff-Appellee,

versus

AARON GARCIA,
a.k.a. Aaron Garcia-Silva,

                                                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 10, 2018)

Before ROSENBAUM, JULIE CARNES, and HULL, Circuit Judges.

PER CURIAM:

Aaron Garcia appeals his convictions on two counts of distribution and possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).  He argues for the first time on appeal that the government breached the terms of the plea agreement.  After careful review, we affirm.

## I.

Garcia was indicted on one count of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), and two substantive counts of cocaine distribution, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Garcia entered into an agreement with the government to plead guilty to the two counts of distribution.  In the plea agreement, the government promised to do several things, including "to provide relevant factual information" to the district court and the U.S. Probation Office for sentencing purposes and "to correct any misstatements or inaccuracies."

The plea agreement contained a "factual basis" section.  There, Garcia "certifie[d]" that he admitted as true the following facts: (a) he "belonged to a money-laundering and drug-trafficking organization ("MLDTO") that distributed and possessed with the intent to distribute more than five kilograms of cocaine"; (b) on May 3, 2016, he sold two ounces of cocaine to an undercover officer; (c) on May 20, 2016, he sold five ounces of cocaine to an undercover officer; (d) he told

2

the undercover officer on May 20 that "he recently moved $1,300,000 in drug proceeds to Mexico" and was paid $15,000; (e) on June 15, 2016, he told the undercover officer that "the MLDTO had received an eighty-kilogram shipment of cocaine . . . the previous Friday," and that "the eighty kilograms were already distributed."

At Garcia's plea hearing, the government stated, as relevant here, that it could prove the following facts beyond a reasonable doubt:

> From at least in or about January 2016 through June 21st of 2016, Aaron Garcia belonged to a money laundering and drug trafficking organization that distributed and possessed with the intent to distribute more than five kilograms of cocaine . . . . [Garcia] also participated in collecting cocaine proceeds on behalf of this organization.
>
> On May 3rd of 2016, a Task Force officer acting in an undercover capacity brought approximately two ounces of cocaine from [Garcia] for $2500.
>
> On May 20th of 2016, the undercover officer brought approximately five ounces of cocaine from [Garcia] in exchange for $5500.

When asked by the court if those facts were correct, Garcia indicated that he did not agree entirely, and defense counsel clarified that Garcia "agreed to the May 3rd and May 20th sales, but obviously, whether or not the [MLDTO] distributed over five kilograms, he wants to be sure that it's clear that he's not assenting to those facts." Apart from that objection or clarification, however, Garcia agreed that the

3

government's description of his offense conduct was accurate. The court did not otherwise address Garcia's objection.

Garcia's presentence investigation report ("PSR") calculated a drug quantity of 118 kilograms, based largely on the facts reflected in the factual basis of the plea agreement. According to the PSR, the conspiracy of which Garcia was a member distributed between 20 and 50 kilograms per month from at least January 2016 through August 2016. The leader of the conspiracy, Saul Velazquez-Bazan, operated a pallet business through which the cocaine was received, stored, and distributed. Garcia worked directly for Velazquez. Garcia sold a total of seven ounces of cocaine to an undercover officer on two dates in May 2016. During the second meeting, Garcia told the undercover officer that he had recently transported $1,300,000 in drug proceeds to Mexico for Velazquez and that he was paid $15,000 for the trip. Later, on June 15, 2016, Garcia told the undercover officer that the organization had received an 80-kilogram shipment of cocaine on June 10, all of which had been distributed. Based on these facts, the PSR held Garcia responsible for the 80-kilogram cocaine shipment of which he had direct knowledge, plus 38 kilograms for the $1,300,000 in drug proceeds.

Garcia filed objections to the PSR and a sentencing memorandum incorporating similar arguments. His objections came in two categories. First, he sought to include additional allegations about the broader conspiracy of which he

was a part.  Second, he sought to clarify or explain certain statements he made, citing recordings, interviews, and other evidence.  As relevant here: (a) he admitted stating that he had transported $1,300,000 in drug proceeds, but he denied saying it was a "recent" trip and claimed that it was a "lie" to impress the undercover officer; and (b) he admitted that, according to a recording of the phone conversation regarding the 80-kilogram shipment, he had stated to the undercover officer, "A week—a week and a half ago they come in, like, ah, 80, and they gone already."  Garcia argued that the 80-kilogram shipment was outside the scope of his jointly undertaken activity.

At his sentencing, Garcia advocated for a drug quantity of 186 grams, which was the total amount he distributed on May 3 and May 20.  Responding to Garcia's arguments, the government cited his admission in the plea agreement that he was a member of a conspiracy that distributed more than five kilograms of cocaine, which alone took him well above the 186-gram amount.  Garcia agreed that the plea agreement said what the government said it did, but he argued that the greater drug quantity was not within the scope of his jointly undertaken criminal activity.

Ultimately, the district court overruled Garcia's objections and held him responsible for 118 kilograms of cocaine.  With a base offense level of 34, *see* U.S.S.G. § 2D1.1(a)(5) (2016), a three-level reduction for acceptance of responsibility, *see id* § 3E1.1, and a criminal history category of II, his guideline

range was 121 to 151 months.  The district court sentenced him to 121 months of imprisonment, and Garcia now appeals.

## II.

On appeal, Garcia claims that the government breached its promise to correct any misstatements or inaccuracies when, during the sentencing hearing, it failed to inform the district court that Garcia, during the plea hearing, did not agree to being a member of a conspiracy that distributed more than five kilograms of cocaine.  He contends that the district court's reliance on that fact at sentencing affected his substantial rights because it was not properly before the court, having been "removed . . . from the factual basis of the guilty pleas," and because it factored significantly into the court's drug-quantity findings.

Whether the government breached a plea agreement is a question of law that we ordinarily review *de novo*.  *United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008).  Where, as here, the defendant did not object to the alleged breach before the district court, we review for plain error only.  *Id.*  Under plain-error review, a defendant must show that (1) the district court erred; (2) the error is plain; (3) the error affects his substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.*  An error affects substantial rights when it affects the outcome of the district court proceedings—in this case, the sentence.  *Id.*; *Puckett v. United States*, 556 U.S.

6

129, 135, 142 n.4 (2009).  The defendant bears the burden of persuasion on prejudice.  *De La Garca*, 516 F.3d at 1269.

A material promise by the government that induces a guilty plea is binding upon the government.  *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016).  "A government breaches the plea agreement when it fails to perform the promises on which the plea was based."  *Id.*  Whether the government has violated the plea agreement is determined according to the defendant's "reasonable understanding at the time he entered his plea."  *Id.*  Whether the government's actions are inconsistent with the defendant's understanding of the plea agreement is determined using an objective standard.  *Id.*

A defendant may bargain for the plea agreement to limit the type of facts the government may offer to the district court.  *See United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992).  When a plea agreement stipulates a particular fact, the government cannot later argue in contradiction of that fact.  *United States v. Jefferies*, 908 F.2d 1520, 1527 (11th Cir. 1990).

Here, Garcia has not established plain error.  As for the first two prongs of plain-error review, we find it difficult to say that any error occurred, much less that the error was plain.  The government arguably did not need to correct any "misstatements or inaccuracies" at the sentencing hearing because the government accurately described the plea agreement.  True, the government did not note that

Garcia had attempted to walk back his agreement to certain facts during the plea hearing.  But Garcia identifies no legal authority holding that the government at sentencing could not rely on facts—unnecessary to support his guilty plea to the two substantive distribution counts—that he admitted in the plea agreement, notwithstanding his later objection during the plea hearing.  Nor did the government's binding promises in the plea agreement clearly forbid it from citing those facts without also noting his objection.  Under these circumstances, we cannot say that any legal error was "clear or obvious, rather than subject to reasonable dispute."  *See Puckett*, 556 U.S. at 135.

But even assuming that the government plainly breached the plea agreement, Garcia has not shown that the breach affected his substantial rights.  Simply put, there was no prejudice.  During the plea hearing, Garcia said he did not agree to "whether or not the [MLDTO] distributed over five kilograms," but he never objected that he was not a member of the conspiracy, nor did not contest the other specific facts admitted in the plea agreement.  These facts included that he told the undercover officer (a) "he recently moved $1,300,000 in drug proceeds to Mexico" and was paid $15,000, and (b) "the MLDTO had received an eighty-kilogram shipment of cocaine . . . the previous Friday," and that "the eighty kilograms were already distributed."  And there was never any real dispute that Garcia in fact made these statements to the undercover officer.  Indeed, in his objections to the PSR,

Garcia broadly admitted doing so and cited the underlying evidence. Because the PSR relied on these same facts to calculate the drug quantity of 118 kilograms, which the district court adopted at sentencing, Garcia has presented no grounds to conclude that the government's alleged breach of his plea agreement affected his sentence. *See De La Garza*, 516 F.3d at 1269.

Nor, in any event, would it be consistent with the fourth prong of plain-error review to allow Garcia to obtain relief by denying facts he expressly admitted in a plea agreement negotiated with the assistance of counsel. Put differently, this was not an error that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *See id.*

For all of these reasons, we affirm Garcia's convictions.

**AFFIRMED.**