**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-11693
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CRISTIAN CHEVARRA MORENO,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00321-VMC-TGW-1

_____

Before GRANT, LAGOA, and KIDD, Circuit Judges.

PER CURIAM:

Cristian Chaverra Moreno[1] appeals his controlled substance convictions under the Maritime Drug Law Enforcement Act ("MDLEA"). On appeal, he argues that, because the government failed to establish the elements of MDLEA subject matter jurisdiction, the district court lacked authority to enter judgment in his case. After careful review, we affirm Chaverra Moreno's convictions.

## I. BACKGROUND

In September 2022, U.S. Coast Guard officers aboard a Royal Netherlands Navy ship observed a go-fast boat traveling at a high rate of speed approximately 71 nautical miles north of Puerto Cabello, Venezuela. While in pursuit of the go-fast boat, which was taking on water and beginning to sink, the Coast Guard saw Chaverra Moreno and the boat's other two crew members throw several packages overboard. The Coast Guard ultimately detained the crewmembers and recovered ten of the discarded packages, "which field-tested positive for cocaine, with a total at-sea weight of 326 kilograms."

Chaverra Moreno and the go-fast boat's other two crew members were indicted for: (1) conspiracy to possess with intent to distribute a controlled substance while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C.

---

[1] The case captions, indictment, and judgment misspell the appellant's name as "Chevarra" Moreno, but the parties acknowledge that the correct spelling is "Chaverra" Moreno.

§§ 70503(a), 70506(a), (b), and 21 U.S.C. § 960(b)(1)(B)(ii); and (2) possession with intent to distribute a controlled substance while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a), 18 U.S.C. § 2 and 21 U.S.C. § 960(b)(1)(B)(ii). Chaverra Moreno noticed his intent to plead guilty without a written plea agreement.

In anticipation of the change of plea hearing, the government filed a document laying out the maximum applicable penalties, elements of the charged offenses, and factual basis for Chaverra Moreno's charges. As relevant here, the factual proffer identified the go-fast boat as being in the "international waters of the Caribbean Sea," and explained that Chaverra Moreno "willingly agreed to transport five kilograms or more of cocaine" and "smuggle these drugs through international waters and distribute them to other persons." The proffer also identified the go-fast vessel as "stateless" and noted that, during questioning, none of the crewmembers identified themselves as being in charge or claimed nationality for the vessel.

At the change of plea hearing, a magistrate judge read the indictment, and explained that, if the case proceeded to trial, the government would have to prove that the charged offenses "occurred on the high seas onboard a vessel subject to the jurisdiction of the United States." With that understanding, Chaverra Moreno pleaded guilty to both counts. He did not dispute the government's proffered facts or the magistrate judge's characterization of the go-fast boat being found "out in the middle of the Caribbean Sea."

The district judge accepted the guilty plea, and Chaverra Moreno proceeded to sentencing, receiving a term of imprisonment. He now timely appeals his convictions.

## II. STANDARD OF REVIEW

We review de novo questions of a district court's subject matter jurisdiction even when raised for the first time on appeal. *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016).

## III. DISCUSSION

The Felonies Clause of the Constitution "empowers Congress to 'define and punish Felonies committed on the high seas.'" *United States v. Canario-Vilomar*, 128 F.4th 1374, 1378 (11th Cir. 2025) (ellipses omitted) (quoting U.S. CONST. art. I, § 8, cl. 10), *petition for cert. filed* (U.S. Aug. 26, 2025) (No. 25-5506). "The high seas lie beyond any nation's territorial seas and are 'international waters not subject to the dominion of any single nation.'" *United States v. Davila-Mendoza*, 972 F.3d 1264, 1268 n.2 (11th Cir. 2020) (quoting *United States v. Louisiana*, 394 U.S. 11, 23 (1969)).

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to manufacture or distribute[] a controlled substance" on board "a [covered] vessel subject to the jurisdiction of the United States," and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b). The statute defines a "vessel subject to the jurisdiction of the United States" as including, in relevant part, "a vessel without nationality." *Id.* § 70502(c)(1)(A). The MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b).

23-11693                Opinion of the Court                5

"The government bears the burden of establishing that the statutory requirements of MDLEA subject-matter jurisdiction are met." *United States v. Cabezas-Montano*, 949 F.3d 567, 588 (11th Cir. 2020); *see United States v. De La Garza*, 516 F.3d 1266, 1271–72 (11th Cir. 2008); *see also United States v. Tinoco*, 304 F.3d 1088, 1114 n.25 (11th Cir. 2002) (leaving open the burden of proof the government must satisfy).

On appeal, Chaverra Moreno argues that the government failed to establish beyond a reasonable doubt that his boat was seized on the "high seas" and thus subject to the jurisdiction of the United States. In turn, the government asserts that Chaverra Moreno waived the ability to make this argument by pleading guilty and conceding facts that established his factual guilt. We disagree.

We have repeatedly held that parties may neither "stipulate jurisdiction" nor waive jurisdictional challenges. *Iguaran*, 821 F.3d at 1337; *see United States v. Betancourth*, 554 F.3d 1329, 1332 (11th Cir. 2009) ("[C]hallenges to the subject matter jurisdiction of the federal courts cannot be waived."); *De La Garza*, 516 F.3d at 1271 (The appellant "did not waive his subject matter jurisdiction argument because it cannot be waived."). Parties may, however, stipulate to facts bearing upon a jurisdictional inquiry, and it is the task of a court "to determine whether the stipulated facts give rise to jurisdiction." *Iguaran*, 821 F.3d at 1337 (citation modified). Although we determine that Chaverra Moreno's challenge on appeal is one that cannot be waived by a guilty plea, we nonetheless

conclude that his arguments are meritless, and the district court possessed subject matter jurisdiction over the charged offenses.

Chaverra Moreno asserts that the government only provided an approximation of the go-fast boat's location, and, by his calculation, it was not seized upon the "high seas," but rather, within the contiguous zone of either Bonaire or a Venezuelan island. We have held that a "contiguous zone [is] the functional equivalent of [a] border" so "the standard applied to searches in the [United States's] contiguous zone will be prescribed by border search standards." *United States v. Hidalgo-Gato*, 703 F.2d 1267, 1273 (11th Cir. 1983). In reaching this conclusion, we explained that a nation's "[t]erritorial waters . . . extend[] three miles from the coast." *Id.* at 1269 n.4. We further noted that the contiguous zone is "[t]he area between the present three-mile sea boundary and the twelve-mile customs waters limit," and that the "[h]igh seas . . . extend[] seaward from the territorial waters encompassing . . . the contiguous zone." *Id.* at 1269 n.4, 1271; *see also United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003) ("The United States generally recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts.").

Our recent decisions in *United States v. Alfonso* and *United States v. Canario-Vilomar* are instructive in applying these principles to the issue presented in the instant case. In *Alfonso*, the defendants were convicted under the MDLEA after they were found aboard a go-fast vessel containing drugs in the Dominican Republic's exclusive economic zone ("EEZ"). 104 F.4th 815, 818–19 (11th Cir.

23-11693              Opinion of the Court                  7

2024), *cert. denied*, No. 24-6177 (May 19, 2025), and No. 24-6691 (May 19, 2025). On appeal, the defendants challenged the constitutionality of the MDLEA as applied to them under the Felonies Clause, arguing, in relevant part, that the district court lacked subject matter jurisdiction over their case because a country's EEZ was not part of the "high seas." *Id.* at 818–20. A country's "EEZ sits just beyond a nation's territorial waters but within 200 miles of the coastal baseline." *Id.* at 821.

We rejected the defendants' arguments, noting that "we repeatedly have upheld the MDLEA as a valid exercise of Congress's power to define and punish Felonies on the high Seas." *Id.* at 820 (citation modified). In analyzing whether a nation's EEZ fell within the "high seas," we looked to the meaning of the term at the time of the Constitution's ratification. *Id.* at 821–23. At that time, the "cannon shot rule," which corresponded to the roughly three-mile-range of a cannon shot, exemplified the United States's sovereignty over territorial waters, as well as that of other nations. *Id.* at 822. We explained that the exact boundary of a cannon shot "may have been up for debate," but "it was generally understood that the 'high seas' were the waters beyond a nation's territorial sea and . . . were not subject to the sovereignty of any nation." *Id.*

Based on this understanding, our Court concluded that, at the time of the Constitution's ratification, "there were two divisions of the sea—territorial waters of nations and the 'high seas,' the latter of which fell outside of national sovereignty," and "[s]pecial carveout zones, such as the EEZ, did not exist." *Id.* at 823. We

8                    Opinion of the Court                    23-11693

explained that "international law does not limit the Felonies Clause" and "[n]othing about the modern EEZ as defined by customary international law disturbs in any way the Founding era concept of the term 'high seas' that informed the original meaning of the Felonies Clause." *Id*. at 823, 826. We held that a nation's EEZ is "part of the 'high seas' for purposes of the Felonies Clause," and therefore "enforcement of the MDLEA in EEZs is proper." *Id*. at 823, 827.

We reaffirmed this holding in *Canario-Vilomar*. Relying on *Alfonso*, we concluded that Congress was not constrained by international law in crafting the MDLEA and rejected the argument "that Congress could not reach [the appellant] merely because he chose to traffic drugs in Colombia's EEZ rather than farther out into the open ocean." *Canario-Vilomar*, 128 F.4th at 1381–82.

Here, the government's proffered facts, to which Chaverra Moreno did not object, established that the go-fast boat was seized roughly 71 miles north of Puerto Cabello, Venezuela, and was generally "in international waters of the Caribbean Sea." Even if we assume that this location implicated a contiguous zone of a Venezuelan island or Bonaire, this fact would not deprive the district court of jurisdiction, as a contiguous zone is not the same as a "territorial sea" and is thus a part of the "high seas" under our Court's interpretation of the term.

Although Chaverra Moreno attempts to distinguish a contiguous zone from the EEZs addressed in *Alfonso* and *Canario-Vilomar*, the rationale of those cases still applies here, and we are

23-11693                Opinion of the Court                9

bound to follow this binding precedent. *See United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016); *United States v. Lee*, 886 F.3d 1161, 1163 n.3 (11th Cir. 2018). In those cases, we explained that EEZs are part of the "high seas" because they extend outward from a nation's territorial sea. *See Alfonso*, 104 F.4th at 823, 827; *Canario-Vilomar*, 128 F.4th at 1381–82. Similarly, a contiguous zone does not include a nation's territorial sea, but, instead, extends outward from the country's territorial waters. *See Hidalgo-Gato*, 703 F.2d at 1269 n.4, 1271.

Chaverra Moreno makes no contention that his go-fast boat was intercepted in the "territorial waters" of another nation. As such, we conclude that Chaverra Moreno's go-fast boat, a vessel without nationality in another nation's contiguous zone, was on the "high seas" and thus subject to the jurisdiction of the United States for purposes of the MDLEA.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** Chaverra Moreno's convictions.